**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JOSEPH N. MONTELEONE,

    Petitioner,

-vs-                                                    Case No. 8:15-cv-686-T-36AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner, a Florida prisoner, initiated this action by filing a petition for the writ of habeas corpus pursuant to 28 U.S.C. Section 2254 (Dkt. 1) with exhibits (Dkts. 1-1 through 1-9). Upon consideration, the Court ordered Respondent to show cause why the relief sought in the petition should not be granted (Dkt. 5). Thereafter, Respondent filed a response (Dkt. 7) and an appendix of exhibits (Dkt. 8). Petitioner subsequently replied to the response (Dkt. 10).

Petitioner alleges two claims in his petition:

1.    Trial counsel was ineffective in failing to impeach the victim with prior inconsistent statements, omissions, and photographs; and

2.    He was denied a fair trial when the prosecutor failed to correct testimony that she knew was false.

**I. PROCEDURAL HISTORY**

Petitioner was found guilty of burglary of an unoccupied dwelling and sentenced as a habitual felony offender to thirty years in prison (Respondent's Exhibits, pp. 106, 115, 119). The appellate court affirmed without a written opinion. *Monteleone v. State*, 42 So. 3d 240 (Fla. 2d DCA 2010) [table].

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850, Florida Rules of Criminal Procedure (Respondent's Exhibits, pp. 8-102). He subsequently filed an amended Rule 3.850 motion (*Id.*, pp. 219-304), which was denied following an evidentiary hearing (*Id.*, pp. 768-814). The denial of the amended Rule 3.850 motion was affirmed on appeal. *Monteleone v. State*, 156 So. 3d 1093 (Fla. 2d DCA 2014) [table]. Petitioner thereafter filed his federal habeas petition in this Court (Dkt. 1).

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984),

3

established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III. ANALYSIS

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

**Ground One**

Petitioner contends that his trial attorney was ineffective in failing to impeach the victim, Danny Bui, with "prior inconsistent statements, omissions, and photographs." Specifically, Petitioner asserts that defense counsel should have impeached Bui's trial testimony: 1) that when he returned to his house there was an open window, with a statement he gave to police that omitted any mention about an open window; 2) that when he returned to his house he first noticed an open closet door and a tool bag that was open inside the closet, with his deposition testimony that he first noticed a tool on a chair in his computer room, and the tool bag was outside the closet rather than inside; 3) that he chased Petitioner in his truck, lost him for a few minutes, then chased him again before losing him a second time, with his deposition testimony that he chased Petitioner, lost him, returned to his house and saw a tool was moved, then returned to where he last saw Petitioner; and 4) that before he encountered Petitioner in his back yard, he had left his house to drive to Home Depot to buy a lawnmower and returned to his house because he forgot his wallet, with crime scene photographs taken 1½ hours after the incident that showed a "brand new lawn mower box" and freshly cut grass. He argues that had trial counsel impeached Bui on these matters, the jury would have concluded that: 1) there was no open window through which Petitioner allegedly entered the house; 2) nothing was moved inside the house; 3) Bui was not telling the truth and not a credible witness; and 4) Bui never left the house to buy a lawnmower, but rather was most likely at his house, which would have made it unlikely that Petitioner attempted to enter the house.

In state court, Petitioner raised this claim in Ground One of his Rule 3.850 motion (Dkt. 1-1, Petitioner's Ex. A, docket pp. 9-22). In denying the claim after an evidentiary hearing, the state post-conviction court stated:

> In claim one, Defendant alleges ineffective assistance of counsel due to

counsel's failure to impeach the State's key witness with non-cumulative impeachment evidence. Specifically, Defendant alleges State witness Mr. Danny Bui testified regarding his version of the events that took place on the day of the alleged offense. Defendant alleges other than Mr. Bui's testimony, the State had no other physical or testimonial evidence proving Defendant's guilt. However, Defendant alleges Mr. Bui made several inconsistent and contradictory statements.

Defendant alleges Mr. Bui's trial testimony was inconsistent with his prior deposition testimony, a prior statement he gave police, and crime scene photographs. Defendant alleges his counsel advised him "I will ask the questions I think are necessary." Defendant alleges his counsel failed to use the prior deposition, prior police report, or photographs to cross-examine Mr. Bui and bring out the inconsistencies alleged in pages 9 through 21 of his motion. Defendant alleges his counsel's failure to impeach Mr. Bui proved fatal to Defendant's case and consequently led to Defendant being convicted and sentenced.

Specifically, Defendant alleges if his counsel would have impeached Mr. Bui with the inconsistencies and contradictions within his testimony, the jury would have used them in determining his credibility and would have given his testimony little to no weight at all. Defendant further alleges because the State's case hinged on Mr. Bui's testimony, the jury would have returned either a verdict for the lesser included offense of trespass or a not guilty verdict. The Court granted an evidentiary hearing on this claim and the evidentiary hearing was held on April 17, 2013.

After reviewing the allegations, the testimony, evidence, and arguments presented at the April 17, 2013, evidentiary hearing, the court file, and the record, the Court finds Ms. Garland's testimony to be credible. Therefore, the Court finds the theory of defense was that it was a trespass and not a burglary: The Court finds based on their defense that Defendant was simply trespassing on the property and not committing a burglary because the State never proved entry into the residence, Ms. Garland made a strategic decision not to impeach Mr. Bui on what she believed were irrelevant discrepancies, if they were discrepancies at all, between Mr. Bui's trial testimony and his deposition testimony, the police report, or the photos. The Court finds Ms. Garland did not believe whether the grass was mowed, or the victim left the house to go to Home Depot to buy a lawn mower, was central to their defense that Defendant was only trespassing in the victim's yard. The Court finds Ms. Garland believed Mr. Bui's trial testimony was better for the defense than his deposition testimony and, therefore, made a strategic decision not to use the deposition to impeach him. Consequently, the Court finds Defendant cannot demonstrate that Ms. Garland acted deficiently or any resulting prejudice when Ms. Garland made a strategic decision not to impeach Mr. Bui with the alleged inconsistencies. As such, no relief is warranted upon the allegations in claim one.

(Respondent's Exhibits, pp. 769-70).

6

First, with regard to Petitioner's contention that counsel should have impeached Bui with the police statement that did not mention that Bui saw a window was open in his house, it is not clear that counsel would have been allowed to do so. In *Varas v. State*, 815 So. 2d 637 (Fla. 3d DCA 2001), the Florida Third District Court of Appeal stated:

> It is well-settled that a witness may be impeached by a prior inconsistent statement, including an omission in a previous out-of-court statement about which the witness testifies at trial, if it is of a material, significant fact rather than mere details and would naturally have been mentioned. *See State v. Smith*, 573 So. 2d 306, 313 (Fla. 1990). This also includes omissions in police reports provided such omissions are of material and critical facts which are in serious contention at trial. *See State v. Johnson*, 284 So. 2d 198 (Fla. 1973) (stating that: "[a]bsent some singular importance attaching to the point in question, which goes to a material and critical fact in serious contention in the trial, a negative basis is not the kind of use of a police report which justifies breaching the normally protected police reports and investigative notes, reports and files. . . . The inquiry must be upon a crucial point . . . and the point involved in vital focus so that it becomes critical to the defense."). Negative impeachment is more likely deemed to be permissible where a witness appears to be fabricating. *See Morton v. State*, 689 So. 2d 259, 264 (Fla. 1997).

*Id*. at 640. There is no allegation or indication that Bui appeared to be fabricating that there was an open window in his house. Moreover, it is doubtful that whether or not the window was open was a "material and critical fact" that was "in serious contention." The critical issue was whether or not Petitioner entered the house, not whether the window was open. Finally, it is questionable whether the police statement was inconsistent with the trial testimony or even omitted the information regarding an open window, since the statement indicated that the officer "saw the point of entry, which was a side window[,]" and a tool was "moved to the rear bedroom adjacent to the point of entry/exit." (Dkt. 1-9, Petitioner's Ex. I, docket p. 2). Counsel could not have been ineffective in failing to impeach Bui with the police statement if it could not have been used for that purpose at trial.

Even if counsel was allowed to use the police statement to impeach Bui, there is nothing in the record showing how Bui would have responded if asked why the statement did not mention that the

window was open. The statement is a summary of information Bui provided to police, not a transcript of a recorded statement. Therefore, it does not establish whether or not Bui told the police that he found the window open. If asked at trial why the police statement/report did not state that Bui found the window open, Bui could have answered that he told the police that the window was open.

Moreover, while Petitioner emphasizes the differences between the police statement and Bui's trial testimony, an effective attorney would have been mindful of their consistencies. For example, the statement indicates that Bui informed police that he had been gone from his house for a short time and returned, he saw Petitioner in his back yard, Petitioner said he was looking for a dog, Petitioner fled when Bui said he would call the police, he chased Petitioner in his truck until Petitioner went into a neighbors yard, when he returned to his house he noticed tools had been taken out of the tool bag, and a tool was moved to a room in the back of the house near "the point of entry/exit." (*Id*.). Drawing the jury's attention to the police statement, which, according to Petitioner, was given within 1½ hours after the incident, might have been more harmful than helpful to Petitioner. Accordingly, Petitioner has not met his burden to demonstrate deficient performance.

Even assuming deficient performance, Petitioner fails to demonstrate prejudice, that is, a reasonable probability that, but for the alleged error of counsel, the result of the trial would have been different. Petitioner has shown no reasonable probability that the omission in the police statement that the window was open would have impaired Bui's credibility sufficient for the jury to disbelieve the remainder of his detailed testimony concerning the events. And the impeachment evidence would not have, as Petitioner alleges, established that the window was not open, and Petitioner did not enter Bui's house. Moreover, more powerful evidence that Petitioner did not enter the house - - for example, Bui left his house and returned in less than five minutes (Respondent's Exhibits, p. 194), he never saw Petitioner inside the house or climbing out a window (*Id*., p. 195), he did not see Petitioner

8

wearing gloves (*Id*., p. 196) and Petitioner's fingerprints were not found in Bui's house (*Id*., pp. 731-32), nothing was missing/taken from or damaged in the house (*Id*., p. 197-98), the window was not open far enough for a person to fit through it (*Id*., p. 198), the burglar bars on the window were closed but not locked (*Id*.), he was not sure whether the damage to the window existed before that day (*Id*., p. 202), the tool bag was easy to carry for someone who wanted to steal tools, yet only one tool (the grinder) was out of the bag and had been moved (*Id*., p. 199), Bui's wife and children also lived in the house and had access to the closet, window, etc. (*Id*., p. 200), and although there were dead leaves on the ground outside the window, Bui did not see any sign of dirt or leaves inside the house (*Id*., pp. 202-03) - - was presented to the jury, which nonetheless returned a guilty verdict.

Second, Petitioner likewise fails to show deficient performance or prejudice with regard to his assertion that defense counsel should have impeached Bui's trial testimony with Bui's deposition testimony on the matters of: 1) whether Bui first noticed the tool in the chair or the open closet door, 2) whether the tool bag was inside or outside the closet, and 3) whether or not after he chased Petitioner and lost him, he returned before looking for and seeing him again. To the extent that there were any inconsistencies between Bui's trial and deposition testimony with respect to these matters, they were inconsequential and harmless. Moreover, counsel testified at the evidentiary hearing that Bui's trial testimony "was, actually, better for us as the Defense than what he testified to in the deposition. So, I wasn't in a position at that point, to bring up things that I felt would have been more damaging testimony-wise that he'd made in his deposition at the trial" (Respondent's Exhibits, p. 807), and "I felt like his testimony [regarding where he saw the tool bag] at trial was less damaging to us because I think he had testified at the deposition. . .that the bag was actually pulled out of the closet and a bunch of stuff was moved but at trial he testified that the bag was just sitting on the floor in the closet where he normally keeps it and there was just one item moved from it." (*Id.*, p. 811).

9

Counsel further testified that she did not want to "nitpick" with Bui on the minor inconsistencies, and her strategy was to show that someone else, possibly one of Petitioner's family members, moved the tool to the office (*Id.*).

Counsel's decision not to highlight minor inconsistencies on largely immaterial matters, but rather concentrate on the lack of evidence that Petitioner had entered the house, was not ineffective assistance of counsel. *See, e.g., Campbell v. United States*, 364 F.3d 727, 735 (6th Cir.2004); *Allen v. Woodford*, 395 F.3d 979, 999 (9th Cir. 2005) (there is no ineffective assistance where defense counsel decides not to impeach a witness over inconsequential matters). And counsel's decision not to draw the jury's attention to Bui's largely consistent deposition testimony that was more damaging than his trial testimony was reasonable strategy. *See Haag v. Secretary*, 2017 U.S. Dist. LEXIS 218471, at *60 (M.D. Fla. Sep. 25, 2017) (quoting *Kelly v. United States*, 820 F.2d 1173, 1176 (11th Cir. 1987)) ("A strategic decision by counsel, such as how or whether to cross-examine a witness, constitutes ineffective assistance 'only if it was so patently unreasonable that no competent attorney would have chosen it.'").

Third and finally, Petitioner fails to demonstrate deficient performance and prejudice with regard to his assertion that counsel failed to impeach Bui with photographs showing "a brand new lawnmower box," a mowed lawn, and freshly cut grass clippings in a trash can. He argues that these photographs establish that Bui already had a new lawnmower that was recently used to mow the lawn at his house, and contradicts the statement he gave to police, and his deposition and trial testimony, that shortly before he encountered Petitioner in his backyard, he left his house to drive to Home Depot to buy a lawnmower. He contends that this impeachment evidence would have shown that Bui was not a credible witness, and the jury could have concluded that Bui never left his house, which would have made "it extremely hard to almost impossible for the Petitioner to enter Bui's residence through

10

a window and move a power tool without Bui knowing it." (Dkt. 1, docket p. 13).

With regard to this issue, defense counsel testified during the evidentiary hearing that:

> I think our main defense was that this was just a trespass and that the State's evidence was lacking in showing that the defendant ever made entry into the home. So, our chief strategy was to show that, one, there wouldn't have been enough time to do it, two, that the witness, victim, didn't ever, actually, see anything that would indicate that my client had been doing anything other than cutting through his backyard. You know, as far as a strategy to impeach him about issues relating to why he went to Home Depot, I didn't really feel were germane to the case.
>
> * * *
>
> [F]rom a strategic or just a logical standpoint, there was no real reason to believe that the victim was lying about where he [was] going that day nor was there any indication to me, at the time, that he was not telling the truth about where he had been.
>
> * * *
>
> I don't think [Bui was ever inconsistent through the police report, deposition or trial testimony that he had gone to the Home Depot and had forgotten his wallet and was returning to his house]. He was [a] difficult witness because English, I don't think, was his first language, so, sometimes, you know, just syntactically the things he said didn't really make sense but he -- as far as him having been consistent about whether or not he went to Home Depot, yes, he was, absolutely, consistent with that.

(Dkt. 1-4, Petitioner's Ex. D, docket pp. 30-31).

Initially, the quality of the photographs provided to the Court is inadequate to show that the box under Bui's carport is a lawnmower box, that the grass clippings were "fresh," and that the lawn was "recently mowed" as Petitioner contends (Respondent's Exhibits, pp. 717-20). Accordingly, Petitioner has failed to show that counsel rendered deficient performance in failing to use the photographs to impeach Bui on the matter of whether he left the house to buy a lawnmower.

Even if the photographs were clear and actually depicted what they purport to demonstrate, they would not establish that Bui testified falsely that he left his house to go to Home Depot to buy a lawnmower. Petitioner indicates that the photographs were taken "approximately 1½ hours after the

11

alleged incident took place." (Dkt. 1, docket p. 13).[2] If true, it is possible that Bui purchased the lawnmower after the incident, and mowed his lawn before the photographs were taken. In fact, it could be argued that the photographs tend to support Bui's testimony that he left his house to buy a lawnmower, since the "brand new lawn mower box" was still open and under the carport just in front of Bui's truck. How Bui would have responded to questions regarding this issue is unknown, since he did not testify during the state evidentiary hearing on Petitioner's amended Rule 3.850 motion. And Petitioner's contention that impeachment of Bui on this issue would have "shown the jurors that Bui was most likely home at the time Petitioner jumped his fence. . ." is purely speculative. Accordingly, Petitioner has not established prejudice with respect to this claim, since he has not shown that Bui's testimony that he left the house to buy a lawnmower is inconsistent with what is depicted in the photographs.

Lastly, counsel testified that it was her strategy not to impeach Bui on this issue because there was no good reason to believe Bui was lying regarding where he was going that morning, Bui had been consistent in his statement to police, deposition, and trial testimony regarding where he was going, and she wanted to focus on the lack of evidence that Petitioner had entered Bui's house. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Thus, counsel's "decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

---

[2]It is not clear from the record how long after Bui saw Petitioner in his yard that the photographs were taken. Bui's deposition testimony indicates that he left for Home Depot in "[t]he morning." (Dkt. 1-8, Petitioner's Ex. H, docket p. 6). The police report appears to indicate that the officer who took the photographs arrived at Bui's house at "1600" hours, i.e., 4:00 p.m. (Dkt. 1-9, Petitioner's Ex. H, docket p. 3).

This Court cannot say that defense counsel's decision not to impeach Bui regarding whether he left his home to buy a lawnmower was unreasonable strategy. Accordingly, Petitioner does not demonstrate that the state court's denial of this claim was an unreasonable application of *Strickland*. Ground One therefore does not warrant federal habeas relief.

**Ground Two**

Petitioner alleges that the State violated *Giglio v. United States*, 405 U.S. 150 (1972), by failing to correct false testimony from Bui during trial. Petitioner contends that during trial the prosecutor allowed Bui to give testimony that was inconsistent with either the statement he gave to police or his deposition testimony. Specifically, Petitioner asserts Bui gave the following inconsistent testimony at trial:

> 1. he testified that when he entered his house, the first thing he noticed was an open closet door and an open bag inside the closet, but during his deposition he testified that the first thing he noticed out of place was a tool in a chair in his computer room, and the bag was outside the closet;
>
> 2. he testified that a window was open in his house and he closed it, but he never mentioned that in his statement to police; and
>
> 3. he testified that he chased Petitioner, lost him for a few minutes, then began chasing him again, whereas during his deposition he testified that after chasing Petitioner and losing him, he returned to his house, then left again to look for Petitioner.

A conviction obtained through the knowing use of perjured testimony is fundamentally unfair and a violation of due process. *United States v. Bagley*, 473 U.S. 667, 677 (1985); *Giglio*, 405 U.S. 150 (1972). A petitioner can establish a violation by showing that "(1) the prosecutor 'knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony,' and (2) there is a reasonable probability that the perjured testimony could have affected the judgment." *United States v. Elso*, 364 F. App'x 595, 599 (11th Cir. 2010) (quoting *Davis v. Terry*, 465 F.3d

13

1249, 1253 (11th Cir. 2006)). A petitioner must show that (1) the statements were "actually" false, (2) the statements were material, and (3) the prosecution knew they were false. *Id*. The false testimony is material when it could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *United States v. Dickerson*, 248 F.3d 1036, 1042 (11th Cir. 2001). "The use of testimony that is inconsistent with a witness's prior testimony or that of a codefendant does not suffice to show that the proffered testimony was false." *Elso*, 364 F. App'x at 599 (citing *Hays v. Alabama*, 85 F.3d 1492, 1499 (11th Cir. 1996) and *United States v. Michael*, 17 F.3d 1383 (11th Cir. 1994)).

Petitioner has not demonstrated that Bui's trial testimony was false or that the prosecution knowingly presented false testimony. Upon review of the record, Bui's trial testimony was, at worst, slightly inconsistent with the police report and his deposition testimony. Inconsistent statements do not rise to the level of perjury, and Petitioner has not demonstrated that perjured statements were made at trial in this case. *See Duckett v. McDonough*, 701 F. Supp. 2d 1245, 1259 (M.D. Fla. 2010).

With regard to what Bui first noticed when he entered his house, during his deposition he was asked "When you went into your house, what did you notice was out of place, at first?" (Respondent's Exhibits, p. 473). He answered "First I - - first I go into the computer room, which is the room that I heard some noise outside the window. And then I saw my tools were there and that's it. . . ." (*Id*.). He subsequently was asked about "other tools in the closet," and he testified that a bag of tools that had been in the closet were now outside of the closet by the closet door (*Id*., pp. 474-75). At trial, he was asked on direct examination "Did you notice anything out of place when you went into your house?" (*Id*., p. 484). He answered "Um, the closet. The closet was wide open when you, when I walked in and, um, I noticed the, um, the bag of tools was open." (*Id*.). He subsequently testified that he closed the closet, went into his computer room, and saw a tool on his computer chair (*Id.*).

14

Accordingly, during both his deposition and trial, Bui consistently testified that when he entered his house he noticed his closet and tool bag were open, and a tool was on his computer chair. The order in which he saw the open closet and the tool is not material. Moreover, nothing provided by Petitioner shows that Bui's trial testimony, as opposed to his deposition testimony, was inaccurate with regard to whether he first saw the open closet or the tool in the chair, and whether the tool bag was inside or outside the closet.[3] It is just as likely that Bui's deposition testimony with regard to this matter was inaccurate as it is that his trial testimony was inaccurate. Having no indication that Bui's trial testimony was false, there is necessarily no indication that the prosecutor knowingly used false testimony.

With regard to whether after Bui chased Petitioner and lost him, he returned to his house before searching for him again, Petitioner again has failed to show Bui testified falsely at trial. During his deposition, Bui testified that after Petitioner ran from him out of his back yard, he got in his car and pursued Petitioner until Petitioner jumped a fence (Respondent's exhibits, p. 471). When asked "When did you see him again?" Bui answered "After I went home and then check [sic] my house [sic] what's going on. . . .And I started to go back to - - I start to jump in my car and go back to the house that he jump the fence. And then I just saw him right there, going back out, walking on the street." (*Id*., pp. 471-72). During trial, Bui testified that after he chased Petitioner and Petitioner jumped the fence, "[Petitioner] just hid in there for like a couple of minutes. And I was, I knew - - I was, um, on the street in my truck waiting for him to come out. But couple of minutes later he came out and then I saw

---

[3]In fact, to the extent that Bui's trial testimony may be construed as stating that he first saw the open closet, that testimony is more consistent than his deposition testimony is with what is written in the police statement (Dkt. 1-9, Petitioner's Exhibit I, docket p. 2). The police statement indicates, in pertinent part, that "[a]fter giving the police a full description of the suspect, he returned home and noticed his tools, which were in the hallway closet, had been taken out of a bag and set aside. He then noticed one of his tools, which was inside the closet, moved to the rear bedroom adjacent to the point of entry/exit." (*Id*.).

15

him right there so I chase him again." (Dkt. 1-6, Petitioner's Ex. F, docket p. 9). Accordingly, Bui testified consistently during his deposition and trial that after Petitioner ran out of his yard, he chased Petitioner in his truck, Petitioner jumped a fence in a neighbor's yard and remained there for several minutes, and Bui subsequently saw Petitioner again after he came out of the neighbor's yard. The inconsistency therefore is whether after Petitioner jumped the neighbor's fence, Bui returned to his house and thereafter returned to where Petitioner had jumped the fence, or whether he did not return to his house but rather waited in his truck on the street until Petitioner came out of the neighbor's yard.

Petitioner once again has failed to demonstrate that Bui's trial testimony, as opposed to his deposition testimony, was inaccurate with regard to whether or not he returned to his house after Petitioner jumped the neighbor's fence. It is just as likely that Bui's deposition testimony with regard to this matter was inaccurate as it is that his trial testimony was inaccurate.[4] Having no indication that Bui's trial testimony was false, there is necessarily no indication that the prosecutor knowingly used false testimony. Moreover, Petitioner has failed to show that whether Bui returned home or waited in his truck after Petitioner jumped the neighbor's fence is material.

Finally, Petitioner has failed to show that Bui's trial testimony that he saw an open window in his house and closed it was false. Petitioner argues that the testimony was false because Bui never mentioned in his statement to the police that there was an open window in his house. Petitioner has failed to show that Petitioner never mentioned the open window when he gave a statement to police. The evidence on which Petitioner relies is not a transcript of Bui's statement, but rather a summary of what Bui told an officer (Dkt. 1-9, Petitioner's Ex. I, docket p. 2). It cannot be determined from this

---

[4] Bui's trial testimony with regard to this matter appears more consistent than his deposition testimony is with what is in the police report. The report does not indicate that Bui returned to his house then left again to look for Petitioner (Dkt. 1-9, Petitioner's Ex. I, docket p. 2).

16

statement what Bui actually said or didn't say to the officer. Moreover, it is apparent that there was some discussion regarding the window, since the police report/statement indicates that the officer "saw the point of entry, which was a side window." (*Id*.). Accordingly, there is no basis to conclude that Bui testified falsely, and the prosecutor knew that he testified falsely, when he stated there was an open window in his house. *Cf. Victory v. Bombard*, 570 F.2d 66, 70 (2d Cir. 1978) (statements witness made to a detective were not prior inconsistent statements merely because they omitted details disclosed by that witness' testimony).

Petitioner has failed to demonstrate that the state appellate court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts.[5] Accordingly, Ground Two does not warrant relief.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

2. The **Clerk** is directed to enter judgment accordingly and close this case.

3. A Certificate of Appealability is **DENIED** in this case, since Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). And because Petitioner is not entitled to a Certificate of Appealability, he is not entitled to proceed on appeal *in forma pauperis*.

---

[5]The silent affirmance of the lower court's ruling is entitled to deference, and this Court must determine whether any arguments or theories could have supported the appellate court's decision. *Wilson v. Warden*, 834 F.3d 1227, 1235 (11th Cir. 2016).

**DONE AND ORDERED** in Tampa, Florida on March 14, 2018.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner *pro se*; Counsel of Record